IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

MICHAEL DAVID HENNAGAN                            PLAINTIFF

            v.                Civil No. 13-2106

CAROLYN W. COLVIN,[1] Commissioner
Social Security Administration                            DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Michael David Hennagan, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claim for disability insurance benefits ("DIB") and supplemental security income under Titles II and XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I.      Procedural Background**

Plaintiff applied for DIB and SSI on March 17, 2011. (Tr. 10.) Plaintiff alleged an onset date of March 17, 2011 due to arthritis, osteoporosis, Hepatitis C, hearing loss, high blood pressure, and depression. (Tr. 10, 166.) Plaintiff's applications were denied initially and on reconsideration. Plaintiff requested an administrative hearing, which was held on May 4, 2012 before ALJ Clifford Shilling. Plaintiff was present to testify and was represented by counsel. The ALJ also heard testimony from Vocational Expert ("VE") Patricia Kent.(Tr. 29.)

---

[1]Carolyn W. Colvin became the Social Security Commissioner on February 14, 2013. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Carolyn W. Colvin has been substituted for Commissioner Michael J. Astrue as the defendant in this suit.

AO72A
(Rev. 8/82)

At the time of the administrative hearing, Plaintiff was 53 years old, possessed a GED, and had attended forklift driving school. (Tr. 34.) The Plaintiff had past relevant work experience ("PRW") of carpenter, produce truck driver, mail sorter, and semi-trailer truck driver. (Tr. 20.)

On September 7, 2012, the ALJ concluded that Plaintiff suffered from the following severe impairments: "arthritis, osteoporosis, hepatitis C, history of acute meningitis, history of renal stones, mild degenerative disc disease of the lumbar spine, mild degenerative disc disease of the cervical spine, hypertension, adjustment order with anxiety, and major depressive disorder." (Tr. 12.) The ALJ found that Plaintiff maintained the residual functional capacity to "perform light work, except he can lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently; he can stand and walk about 6-hours in an 8-hour workday with normal breaks; he can sit 6 hours in an 8-hour workday with normal breaks; he can occasionally climb, stoop, kneel, crouch, and crawl; he can frequently handle bilaterally; he must avoid work where excellent vision is required or in which reading print smaller than standard newspaper print is required; he is limited to occupations that do not require fine hearing capability; he can perform simple, routine, and repetitive tasks; work where interpersonal contact is incidental to the tasks performed and where supervision required is simple, direct, and concrete." (Tr. 14.)

With the assistance of the VE, the ALJ determined that the Plaintiff could perform such representative occupations as janitor and meat trimmer, if they were performed at the light exertional level rather than the more usual medium exertional level. The ALJ also found that he could perform the representative occupation of car wash attendant. (Tr. 21.)

Plaintiff requested a review by the Appeals Council on September 18, 2012. (Tr. 5.) The Appeals Council declined review on March 4, 2013. (Tr. 1.)

**II.     Applicable Law**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence

AO72A (Rev. 8/82)

is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Id*. "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision." *Id.* As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). If the court finds it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, the court must affirm the decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the

3

plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

### III. Discussion

Plaintiff raises four issues on appeal: 1) the ALJ failed to properly develop the evidence; 2) the ALJ failed to consider evidence which fairly detracted from her findings; 3) the ALJ failed to apply the proper legal standards regarding credibility of subjective complaints, weight of physician's opinions, and RFC assigned to Plaintiff; and 4) the ALJ failed to satisfy the burden of proof at Step Five. (Pl.'s Br. at 11-19.) Because this Court finds that the ALJ erred in his credibility analysis on two points and also failed to fully and fairly develop the record, the remaining arguments will not be addressed.

### A.   Credibility Analysis Improper

In determining a claimant's RFC, "'the ALJ must first evaluate the claimant's credibility.'" *Wagner v. Astrue*, 499 F.3d 842, 851 (8th Cir.2007) (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2002)). The ALJ must consider several factors when evaluating a claimant's subjective complaints of pain, including claimant's prior work record, observations by third parties, and observations of treating and examining physicians relating to 1) the claimant's daily activities; 2) the duration, frequency, and intensity of pain; 3) precipitating and aggravating factors; 4) dosage, effectiveness and side effects of medication; and 5) functional restrictions. *Casey*, 503 F.3d 687, 695 (8th Cir.2007) (citing *Polaski v. Heckler*, 729 F.2d 1320, 1322 (8th Cir.1984). In discrediting a claimant's subjective complaints, an ALJ is required to consider all available evidence on the record as a whole and is required to make an express credibility determination. *Lowe v. Apfel,* 226 F.3d 969, 971 (8th Cir. 2000). However, the ALJ is not required to discuss each *Polaski* factor as long as the analytical framework is recognized and considered." *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir.2004). An ALJ's decision to discredit a claimant's credibility is entitled to deference when the ALJ provides "good reason for doing so." *Dunahoo v. Apfel*, 241 F.3d 1033, 1038 (8th Cir. 2001.)

In this case, the ALJ's credibility analysis fails on two points

First, a proper *Polaski* analysis requires the ALJ to conduct an express examination of the dosage, effectiveness, and side effects of all medication. *Polaski*, 739 F. 2d at 1322. Failure to include medication side effects in the hypothetical to the VE, "at a minimum," requires the case to be remanded. *Mitchell v. Sullivan*, 925 F.2d 247, 250 (8th Cir. 1991). At the time of the hearing, Plaintiff testified that he was taking the following drugs prescribed by his treating physician, Dr. Dunham of Clarksville Medical Group: Hydrochlorothiazide[2] for high blood pressure, Doxepin[3] to help him sleep, Lisinopril[4] for high blood pressure, Risperidone[5] for hallucinations, Oxycodone[6] for pain, and Fluoxetine[7] (generic Prozac) for

---

[2] Hydrochlorothiazide is a thiazide diuretic indicated for treatment of hypertension. Side effects include Weakness, hypotension (including orthostatic hypotension), pancreatitis, jaundice, diarrhea, vomiting, blood dyscrasias, rash, photosensitivity, electrolyte imbalance, impotence, renal dysfunction/failure, interstitial nephritis. http://www.pdr.net/drug-summary/hydrochlorothiazide-tablets?druglabelid=1973&id=812 (accessed May 7, 2011.)

[3] Doxepin is an H1-antagonist indicated fro treatment of insomnia characterized by difficulties with sleep maintenance. Side effects include somnolence, sedation, upper respiratory tract infection, nasopharyngitis, hypertension, gastroenteritis, dizziness, and nausea and vomiting. http://www.pdr.net/drug-summary/silenor?druglabelid=2780 (accessed May 7, 2011).

[4] Lisinopril is an ACE inhibitor indicate for treatment of hypertension. Side effects include Hypotension, dizziness, headache, diarrhea, cough, chest pain, hyperkalemia. http://www.pdr.net/drug-summary/prinivil?druglabelid=376&id=839

[5] Risperidone is a benzisoxazole derivative indicated for treatment of schizophrenia. Side effects include increased appetite, fatigue, N/V, constipation, parkinsonism, upper abdominal pain, anxiety, dizziness, tremor, sedation, akathisia, dystonia, blurred vision, stomach discomfort. http://www.pdr.net/drug-summary/risperdal?druglabelid=977&id=606 (accessed May 7, 2011).

[6] Oxycodone is an opioid analgesic indicated for treatment of moderate to severe pain. Side effects include respiratory depression/arrest, circulatory depression, cardiac arrest, hypotension, shock, N/V, constipation, headache, pruritus, insomnia, dizziness, asthenia, somnolence. http://www.pdr.net/drug-summary/roxicodone?druglabelid=1007&id=1286. (accessed May 7, 2011).

[7] Prozac is a selective serotonin reuptake inhibitor indicated for treatment of major depressive disorder in patients older than 8 years of age , OCD, bulimia, panic disorder, bipolar disorder, and treatment resistant depression. Side effects include Somnolence, anorexia, anxiety, asthenia, diarrhea, dry mouth, dyspepsia, headache, insomnia, tremor, pharyngitis, flu syndrome, dizziness, nausea, nervousness. http://www.pdr.net/drug-summary/prozac?druglabelid=3205&id=370 (accessed May 7,

depression. (Tr. 42-43.) He testified that he wakes up groggy and his leg s are "all rubbery." He testified that his medications give him lightheadedness and dizziness, he sweats a lot, and he has drowsiness and nausea. (Tr. 45-46.) In a list of medications submitted prior to the hearing, he indicated that also took Mirtazapine[8] and Nabumetone[9] for depression and arthritis, and that these were new drugs for him. (Tr. 1060.) The ALJ did not include any medication side effects in any of the hypotheticals to the VE. This requires a remand.

Second, the ALJ mischaracterized a significant fact about the Plaintiff's activities of daily living ("ADL"). Incorrect or imprecise evidence "cannot constitute substantial evidence to support an ALJ's decision." *See e.g. Hinchey v. Shalala,* 29 F.3d 428, 432 (8th Cir. 1994) Specifically, the ALJ states that, on a typical day, Plaintiff takes care of his dog and walks six-tenths of a mile. (Tr. 15.) What the Plaintiff actually testified was that he walks his dog around a plant just across from his house. He estimated the distance to be about one-sixteenth of a mile, possibly less. (Tr. 46.) One-sixteenth of a mile is 330 feet, while six-tenths of a mile is 3,168 feet or just less than a kilometer.[10]Thus, these numbers give very different pictures of Plaintiff's typical day and physical capacity. Given that the ALJ relied on the ADL

---

2011).

[8]Mirtazapine is a piperazino-azepine indicated for treatment of major depressive disorder. Side effects include somnolence, increased appetite, weight gain, dizziness, dry mouth, constipation, asthenia, flu syndrome, abnormal dreams, abnormal thinking. http://www.pdr.net/drug-summary/remeron?druglabelid=384&id=971 (accessed May 7, 2011).

[9]Nabumetone is an NSAID indicated for treatment of osteoarthritis and rheumatoid arthritis. Side effects include diarrhea, dyspepsia, abdominal pain, constipation, flatulence, nausea/vomiting, positive stool guaiac, dizziness, headache, pruritus, rash, tinnitus, edema. http://www.pdr.net/drug-summary/nabumetone?druglabelid=776&id=1437 (accessed May 7, 2011).

[10]http://wiki.answers.com/Q/How_many_feet_are_there_in_one_sixteenth_of_a_mile; http://wiki.answers.com/Q/How_many_feet_are_there_in_one_sixteenth_of_a_mile; http://www.algebra.com/algebra/homework/word/misc/Miscellaneous_Word_Problems.faq.question.4 29145.html (accessed May 7, 2011).

AO72A
(Rev. 8/82)

in part to discredit Plaintiff's subjective allegations and the opinion of at least one physician, this error requires a remand.

On remand, the ALJ is directed to perform a new credibility analysis once all information from the remand has been received. This credibility evaluation must explicitly discuss each of the *Polaski* factors, and must take into account the discussion of the facts in this opinion. Further, for each factor, the ALJ must explicitly include his reasoning for each factor, complete with accurate record citations to each source of facts used in that analysis.

**B.	Failure to Fully and Fairly Develop the Record**

The ALJ has a duty to fully and fairly develop the record. *See Frankl v. Shalala*, 47 F.3d 935, 938 (8th Cir. 1995)(ALJ must fully and fairly develop the record so that a just determination of disability may be made). This duty exists "even if ... the claimant is represented by counsel." *Boyd v. Sullivan*, 960 F.2d 733, 736 (8th Cir.1992) (quoting *Warner v. Heckler*, 722 F.2d 428, 431 (8th Cir.1983)). Once the ALJ is made aware of a crucial issue that might change the outcome of a case, the ALJ must conduct further inquiry to fully develop the record. *Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004.); *see e.g. Vossen v. Astrue,* 612 F.3d 1011, 1016 (8th Cir. 2010) (ALJ's failure to recontact Commissioner's consultative physician to authenticate his report was reversible error when that report supported Plaintiff's claim).

In order to develop the record properly, "the ALJ is not free to ignore medical evidence but rather must consider the whole record." *Reeder v. Apfel*, 214 F.3d 984, 988 (8th Cir. 2000). In this case, Plaintiff saw Dr. Dunham repeatedly starting in December 2011. (Tr. 1052-55, 1059). and testified that he was his current treating physician at the hearing. (Tr. 41-42 ) The ALJ specifically noted this at the hearing in his questioning of Plaintiff. (Tr. 41-42. ) Dr. Dunham's diagnosis and treatment supports Plaintiff's claims. However, the ALJ's opinion does not mention Dr. Dunham's diagnosis and treatment of the Plaintiff for poorly controlled depression, psychosis, chronic back pain, and osteoarthritis. The only mention of these

AO72A
(Rev. 8/82)

records in Exhibit 33F is where they are cited in the opinion to show that Plaintiff denied any current kidney symptoms after having suffered a kidney stone. (Tr. 19.) This requires a remand.

Further, it is well-settled in the Eighth Circuit that the ALJ may not rely solely on the report of non-examining Agency physicians to determine the Plaintiff's RFC. *See e.g. Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir. 1999) (holding that the opinion of a consulting physician who examined the plaintiff once or not at all does not generally constitute substantial evidence). If the ALJ is not satisfied with the quality of the medical records on a crucial issue, he or she has a duty to develop the record further. *Vossen*, 612 F.3d at 1016. Although the medical record for this case is voluminous, the ALJ either rejected or ignored the opinions of multiple physicians on both physical and mental issues crucial to Plaintiff's RFC. Instead, the ALJ relied solely on the opinions of non-examining Agency physicians.

Regarding Plaintiff's mental issues, he both raised the crucial issue of and provided objective medical support for depression and hallucinations. However, the ALJ appears to have either given "little weight" or failed to discuss all of the examining or treating physicians opinions, including a psychiatric specialist. Instead, he relied solely upon the RFC provided by a non-examining Agency physician.

His treating physicians, Dr. Marshall and later Dr. Dunham, diagnosed and prescribed medications for these issues. Dr. Marshall diagnosed him with depression, prescribed Citalopram, and then Paroxetine. (Tr. 546-548.) Dr. Dunham diagnosed him with depression and psychosis, and prescribed Risperdal and Prozac. (Tr. 1052-54. ) On November 19, 2012, Dr. Dunham noted that his depression was poorly controlled and that his psychosis was better, but "limits his ability to be functional." (Tr. 1059.) The ALJ did not discuss Dr. Marshall's opinion or treatment of Plaintiff's mental issues. As discussed above, the ALJ failed to discuss Dr. Dunham's treatment records.

Plaintiff was seen for a consultative mental examination by Dr. Peacock, a clinical psychologist and faculty member at the University of Arkansas for Medical Sciences, on June 20, 2011. (Tr. 465.) Dr. Peacock diagnosed Plaintiff with "Polysubstance sustained full remission, Major Depressive Disorder,

8

Single Episode, moderate, and Adjustment Disorder with Anxiety." (Tr. 468.) On his discussion of adaptive functioning, Dr. Peacock stated that he "highly doubts that Mr. Hennagan has the basic capacity to complete work like tasks within an acceptable time frame." (Tr. 470.) He further stated that "it would not be surprising if Mr. Hennagan struggled on tasks involving sustained focus." (Tr. 469.) "Mr. Hennagan would likely struggle to cope with the typical cognitive and mental demands of a job at the present time." (Tr. 469.) He assigned a GAF of 60, but did not complete any formal IQ testing. The ALJ found that Dr. Peacock's opinion was inconsistent with both the medical evidence and the claimant's reported level of functioning, and gave it "little weight." (Tr. 17.)

Plaintiff was admitted into the behavioral unit of St. Mary's Regional Medical Center on October 31, 2011 because he was hallucinating and acting upon those hallucinations. (Tr. 592.) He underwent therapy and had his medications adjusted. He was discharged on November 3, 2011 with a diagnosis of "Major depression, recurrent, with psychotic features" and " Delirium, resolved." (Tr. 594.) The ALJ appears to have dismissed at least part of this opinion because Plaintiff was discharged with "no evidence of psychotic symptomology." (Tr. 18.)

Thus, the only remaining opinion in the record addressing Plaintiff's mental issues[11] is the Mental RFC performed by non-examining Agency physician Dr. Paula Lynch on August 4, 2011. This RFC assessed either no significant limitations or moderate limitations for all categories. (Tr. 489-90.) The summary stated that "[c]laimant appears to be able to perform simple, rote, routine, repetitive, tasks in a setting where interpersonal contact is incidental to tasks performed; and where supervision is simple, direct, and concrete. " (Tr. 491.) This summary is reproduced essentially verbatim in the ALJ's Overall RFC Assessment.

---

[11] Plaintiff presented at Johnson Regional Medical Center with hallucinations due to viral meningitis in August 2010. (Tr. 390, 839.) However, because the meningitis was treated and appears to have been resolved without lingering effect, these medical records are not discussed in this opinion.

AO72A
(Rev. 8/82)

Thus, it appears that the ALJ relied solely upon the opinion of a non-treating, non-examining agency physician for the mental portion of the Overall RFC. This requires a remand.

Additionally, this Court notes that a similar issues exists for Plaintiff's musculoskeletal issues. Plaintiff presented to at least three of his own doctors for chronic back pain, and additionally underwent a physical consultative examination. The ALJ either ignored or rejected the opinions of all four doctors.

The ALJ rejected treating physician Dr. Marshall's Physical RFC as inconsistent with her own treatment notes. (Tr. 18.) He did summarize the November 11, 2011 MRI of Plaintiff's back and cervical areas scheduled by Dr. Marshall. The MRI indicated mild degenerative disc disease and mild osteoarthritis of the lumbar spine, along with postoperative changes in the cervical spine. (Tr. 568-69.) The ALJ failed to discuss Dr. Dunham's notes. Nor does he discuss Dr. Kukendall's x-ray assessement of Plaintiff's lumbar spondylosis with multi-level disc degeneration. (Tr. 314.)

CE Agency physician Dr. Stewart indicated "L-spine normal" or lumbar spine normal and assessed no physical limitations on May 25, 2011. (Tr. 436.) This assessment was made without the benefit of the later MRI, as was the Physical RFC completed June 15, 2011. (Tr. 493.) The ALJ correctly gave the CE's opinion little weight.

However, we are once again left with only the opinion of a non-examining Agency physician to determine the status of Plaintiff's spine, a crucial issue for the Overall RFC. This requires a remand.

On remand, the ALJ is directed to order a second consultative examination with a psychiatric specialist. As part of this examination, the specialist must complete a Mental RFC evaluation. The ALJ is further directed to order a consultative examination with an orthopedic specialist to assess Plaintiff's musculoskeletal issues. The orthopedic specialist must also complete a Physical RFC assessment.

**IV. Conclusion**

AO72A
(Rev. 8/82)

Accordingly, we conclude that the ALJ's decision is not supported by substantial evidence and should be reversed and remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

DATED this 23rd day of May 2014.

/s/ J. Marschewski
HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)